## Samuel Potter, William Page and Thomas Price *against* John Norman and Joseph Norman.

I. in custody under a *ca. sa.* gave bond with security to comply with the requisites of the insolvent act passed 4th April 1798, and accordingly filed his petition in the Court of Common Pleas in June following, and being opposed by his creditors proceedings were stayed until the next August term, and a new bond given. At the August term it was objected, that he had not filed an inventory with his petition, but the case was continued under advisement, and he did not surrender himself. In November term the court discharged the petition. *Quære*, whether the second bond so given, is forfeited?

CASE stated for the opinion of the court.—Summons in debt 260l. returnable to September term 1800, in Montgomery county. Sheriff returned, summons served on Joseph Norman, and *nil habet* as to John Norman.

An action was commenced in the Court of Common Pleas of Montgomery county to February term 1799, by the above plaintiffs against John Norman, one of the above defendants, and judgment was entered for the sum of 127l. 11s. 0¾d. in August term 1799. A second *pluries capias ad satisfaciendum* issued, *returnable to May term 1800, upon which the sheriff of the said county returned *cepi corpus*, and the said John Norman was committed to the prison of the said county. At the same term, the said John Norman petitioned the Court of Common Pleas of the said county for the benefit of the act of assembly, entitled, " an act providing that the person of a debtor " shall not be liable to imprisonment for debt, after delivering up " his estate for the benefit of his creditors, unless he hath been " guilty of fraud or embezzlement " passed on the 4th April 1798, and remained in the custody of the keeper of the said prison, until after the adjournment of the said court, to wit, until the 20th day of May, when the said John Norman gave bond to the said plaintiffs, conditioned for the appearance of him the said John at the next term, to take the benefit of the said act of assembly, and comply with all the requisites thereof, in which said bond, the said Joseph Norman became bound with the said John, for the faithful performance of the condition of the said bond.

[Potter and Co. *v.* Norman.]

On the 20th day of June, the same year, at an adjourned court appointed for the discharge of insolvent debtors, the said John Norman appeared to take the benefit of the said act of assembly ; when, upon being opposed by his creditors, proceedings were stayed until the next term ; and the said John Norman and Joseph Norman by agreement with the plaintiff at that time, entered into another bond, conditioned for the appearance of the said John at the next term, to take the benefit of the said act of assembly, and comply with all the requisites of the said act, the said John for himself, and the said Joseph for the faithful performance of the said John, the former bond being considered by all parties, null and void.

At August term 1800, being the next term, upon John Norman's appearance to take the benefit of the said insolvent act, a motion was made by his creditors to discharge the petition, on account of no inventory being filed with his petition, nor a statement of his debts and credits, under oath. No decision took place at that time, but the case was held under advisement until the next term. The said John Norman was not discharged at that time, agreeably to the prayer of his petition, nor did the said John Norman surrender himself, nor was he surrendered by his said security, to the keeper of the prison of the said county, at that time.

On the first day of November term 1800, the said Joseph Norman in open court, surrendered the said John Norman into the custody of the sheriff of the said county of Montgomery, and he was thereupon committed to prison ; and afterwards on the same day, at the instance of the creditors of the said John *Norman, the said petition of the same John was dis- [*397 charged for the irregularity above stated.

If the court shall be of opinion, upon the circumstances of the above case, that the bond so given by the said John Norman and Joseph Norman on the 20th June 1800, was forfeited before this action was commenced, then judgment to be entered for the plaintiff for the sum of 127l. 11s. 0¾d. with interest from the 1st August 1799, with costs of suit in this, and the action in Montgomery county ; otherwise, a nonsuit to be entered.

Jno. Ewing, jun. *pro quer.*                    Jas. Milnor, *pro def.*

Messrs. Tilghman and S. Ewing for the plaintiff, insisted, that the provisions of the act of 4th April 1798 should be strictly enforced. The 1st and 2d sections, (4 St. Laws 269) point out the mode of application by insolvent debtors under this act, and direct that a schedule of all their property together with a list of their creditors, shall be exhibited and annexed to their petitions ; and the 14th section prescribes the form of the bond and condition that the petitioner shall surrender himself to prison, in case, on his appearance, he does not comply with all things required by the act to procure his discharge, &c. Patrick Moore was remanded to gaol by this court, on the ground of his

not having annexed a statement of his property to his petition; and such is every day's practice. This law cannot be said to be remedial; its consequences were highly injurious to the community. If the insolvent court had discharged John Norman without the schedule directed by law, it would have been competent to the plaintiffs to have brought the present suit; but that court have in effect declared that he did not comply with the condition of his bond. On a covenant to do an act in a specified time, the party is obliged to perform it. 3 Burr. 1637.

Messrs. Rawle and Milnor for the defendant. It is certainly a hard case, if the defendant is chargeable under all the circumstances stated. In judging of a new law, the old law, mischief and remedy must be considered. 1 Bla. Com. 87. The mischief should be suppressed, and the remedy advanced. The act is founded on the state constitution, and its title sufficiently evinces the humane intentions of the legislature. All its provisions breathe the same benevolent spirit; and this court will strain none of its expressions to injure an innocent bail. The cause of action arises out of the process of another court, which would not in England be permitted in the case of bail, the original court being necessarily presumed to be better acquainted with the *circumstances of each case before them. The essence of the condition of the bond is, that the party shall appear, and obey the decision of the tribunal which he has petitioned. It is no where said in the act, that the schedule may not be filed at any time during the term. And in the cases of John M. Taylor and Blair M'Clenachan, they were allowed to amend, notwithstanding it was opposed by their respective creditors. The court of Montgomery alone could decide on the regularity of the petition. If they had decided against it, the prisoner might have immediately petitioned *de novo*. Until they had decided, the proceedings remained in suspense; but their doubts ought never to affect the bond. The court constantly relieve bail on mesne process, even after forfeiture of the bond, where no injury or delay is effected thereby. They had an unquestionable right to adjourn the consideration of the objection made to the petition, and the postponement being the mere act of the court, unopposed by the adverse counsel, ought not now to work a mischief to the defendant.

*Curia advisare vult.*

---

MEMORANDUM.

The city of Philadelphia was again visited by the yellow fever, which proved fatal to many of the citizens in the close of the summer of 1802. The Judges of the Supreme Court met on the first day of the September term, and adjourned until the last day of the term. No other business was done, than making of a few rules, and accepting the sheriff's returns to process.